[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PENDING MOTIONS (DOCKET ENTRIES 139, 151F, 159, 161 AND 165)
The court has for consideration several motions of the parties. Docket entry number 139 is plaintiff's motion seeking a restraining order. Docket entry number 151F is defendant's motion seeking a reduction in child support from $375.00 per week to $300.00 per week. Docket entry number 159 is plaintiff's motion seeking attorney's fees. Docket entry number 161 is defendant's objection to number 159. Docket entry number 165 is plaintiff's motion to modify child support. CT Page 44
Trial of these matters has lasted the better part of five trial days. At the commencement of these proceedings the court disposed of several other motions by agreement of the parties. There have been forty-nine motions filed since the date of the decree of dissolution on July 7, 1988. The parties are extremely vindictive and, as counsel for the plaintiff has indicated, they are "obsessed with getting even."
At the time of the decree the court entered orders for $375.00 per week support for the three minor children now aged 12, 9 and 6. Since that time and effective from and after October 1, 1990, the statute regarding modification of support has been amended. Section 46b-86(a) of the General Statutes now provides that any final order for the periodic payment of support may at any time be modified upon a showing of substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established byP.A. 89-203. Section 46b-86(a) of the General Statutes as amended by P.A. 90-188 and 46 of P.A. 90-213. The amendments now also provide that modification of child support may be made upon a showing of such substantial change of circumstances whether or not such change was contemplated at the time of dissolution.
Looking first to the child support guidelines, the defendant's net weekly wage after deducting business expenses of $100.00 per week, which the court finds is a reasonable business expense deduction for a person in Mr. Franco's position as a salesman and sales manager, is $804.98. The child support guidelines provide for $375.00 support for three children with net income of the noncustodial parent of $750.00 per week. If one were to apply the same percentages for net income over $750.00 per week, i.e., 50 per cent, the amount of child support would be $400.00 per week. The court finds that there is not such a deviation from the child support guidelines to warrant modification on this ground.
On the alternate consideration of modification, the court finds as follows:
At the time of the decree of dissolution, the plaintiff had income from part time employment of $45.00 per week. The defendant had total weekly net income of $747.77. The oral agreement entered into between the parties provided that the defendant's earnings up to $63,000.00 per year will not constitute a basis for modification. It is the defendant's claim that he is not earning up to $63,000.00 per year. The defendant's financial affidavit of December 17, 1990, based upon ten weeks, more accurately reflects the defendant's CT Page 45 current earnings. However, in the amount of $1,244.67 of gross income is included an expense allowance of $100.00 per week. Thus, the earnings for purposes of the parties' agreement would be $59,522.34, a figure less than the $63,000.00.
However, Connecticut courts have long recognized the independent nature of a child's right to parental support. Burke v. Burke, 137 Conn. 74, 79 (1950). A husband and wife cannot make a contract with each other regarding the maintenance or custody of their child that the court is compelled to enforce. Guille v. Guille, 191 Conn. 260, 263-64
(1985). So long, however, as such limitation may remain in the best interests of the minor children, the court will recognize the contractual agreement of the parties.
The plaintiff remarried shortly after the decree of dissolution of marriage. At the time of the decree, the real property in Stratford owned jointly by the parties was to be placed upon the market for sale at a price of $200,000.00. Upon the sale of the property, the net proceeds were to be divided 70 per cent to the plaintiff and 30 per cent to the defendant. On September 14, 1988, the parties entered into a written agreement for the purchase of the plaintiff's share of the premises for $80,100.00. Said sum was paid by the defendant to the plaintiff, and she received $69,314.70 after payment of litigation expenses and an escrow of $448.00 for state and local conveyance taxes. Of this amount, $30,000.00 went as the deposit for her present home at 255 Curtis Street in Meriden and $30,000.00 into C.D.'s and savings. Of this amount, $25,000.00 in July, 1989, was paid to the plaintiff's parents.
The plaintiff's husband, Kenneth Lohman, died on December 8, 1989, and the three Franco children are now receiving Social Security benefits of $291.00 per month each for total monthly income of $1,164.00. In addition, the plaintiff is earning $216.15 gross per week in a part time job in a shopping center. With income of the plaintiff's now in the amount of $444.00 per week, the court finds that there has been a substantial change in the plaintiff's circumstances. See Sanchione v. Sanchione, 173 Conn. 397, 407 (1977); Noce v. Noce, 181 Conn. 145, 147 (1980). "The same criteria that determines an initial award of . . . support (46b-84 of the General Statutes) are relevant to the question of modification." Hardisty v. Hardisty, 183 Conn. 253, 258
(1981); Arnsworth v. Arnsworth, 180 Conn. 218, 221-222 (1980).
For modification of support, the burden of proof rests with the moving party that continued operation of the original order would be unfair or improper. See McGuinness v. CT Page 46 McGuiness, 185 Conn. 7, 10 (1981). Having considered the evidence and all the factors of 46b-84 of the General Statutes, the court finds that continued operation of the current orders of support would not be unfair or improper. The motions of both parties for modification of child support or for modification of the income tax dependency exemptions as originally decreed are denied.
The next issue for the court's determination is the issue of counsel fees. The plaintiff is claiming counsel fees and disbursements in the amount of $28,537.40. These are fees incurred by the plaintiff after payment of $1,000.00 by the defendant and $2,500.00 by the plaintiff. The plaintiff claims she has no money to pay her counsel fees and seeks an order that the defendant pay these fees. Plaintiff seeks an award of counsel fees from January 23, 1989 when her present counsel first entered her appearance. Since March 31, 1990, the defendant has represented himself claiming he no long could afford to pay an attorney.
On September 27, 1989, the issue of counsel fees was before the court. At that time plaintiff's counsel claimed $7,500.00 fees to that date. At that time, $1,000.00 was ordered to be paid by the defendant to plaintiff's counsel. The court finds that counsel fees to that date were determined at that time.
In the summer of 1989 the plaintiff placed $25,000.00 in her parents' hands. It is her claim that she owed her parents this money, yet the most that was ever reflected in any financial affidavit as owed to her parents was $4,200.00 in a financial affidavit of September 12, 1988.
The court finds that the plaintiff's testimony has been less than credible. She testified that the $5,000.00 down payment for her new car was a loan from her mother; yet, no liability is shown to her mother on her financial affidavit. She testified that her check register was "misplaced", that her mortgage payment book had "disappeared." She told the police that the babysitter took "well over $2,000.00 cash and jewelry." In testimony she said $1,200.00. The babysitter says $200.00, and it was $200.00 to which the babysitter pleaded guilty. She testified that much of the money received upon purchase of her share of the Stratford real property was spent for payment of her husband's medical bills; yet, evidence from Yale New Haven Hospital and Yale University of Professional Services demonstrated that $1,621.00 went for such expenses and that part of that was reimbursed."
The plaintiff has been less than truthful, also, in CT Page 47 her financial affidavits. Her new automobile is listed with a loan balance of $10,000.00 when in fact it is $8,000.00. The principal balance on the mortgage on her home is, in fact, at least $2,000.00 less than disclosed. In her financial affidavit of April 26, 1990, her weekly income was in error by $180.00 per week. In August, 1989, she testified that she had no money, yet had $15,000.00 in a certificate of deposit. The expenses listed in her financial affidavit are overstated as to fuel, phone, cable television and miscellaneous. Food was listed as $100.00 per week in April, 1990, and in her current affidavit as $180.00 per week.
The court finds that the plaintiff's parents still are holding money for the plaintiff and that such amount is $20,000.00 or more. The court finds, also, that the balance in the plaintiff's Connecticut savings account is greater than the $100.00 she shows in her financial affidavit. The defendant's only liquid funds are those in his 401K plan.
The court finds the defendant is in no better position to pay plaintiff's counsel fees than is the plaintiff herself. The plaintiff's motion for counsel fees is, therefore, denied.
Docket entry number 139 is granted. Each of the parties are restrained from calling or contacting the other party, from interfering with or in any way annoying the other party, and from contacting or communicating with any person employed by or associated with the other party in business, and from contacting or communicating with any member of the other party's family. Each party shall refrain from entering upon the other party's property and shall refrain from all nature of harrassment, verbal or otherwise, of the other party, such party's business associates and members of the family.
Docket entry number 151F is denied.
Docket entry number 159 is denied.
Docket entry number 161 is sustained.
Docket entry number 165 is denied.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE.