[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION FOR MODIFICATION OF ALIMONY
Defendant has requested that this court modify an award of alimony entered at the time of the dissolution of his marriage to CT Page 13218 plaintiff on October 27, 1995. At that time, the court approved the stipulation of the parties and ordered defendant to pay to plaintiff $800 per week as periodic alimony for a period often years. The court further stated that "the alimony and support awards contained herein are based on the assumption that the wife has an earning capacity of between $20,000 and $25,000 per year and that the husband has income as stated on his financial affidavit."
Defendant's financial affidavit filed at the time of the dissolution reflects a gross weekly income from his medical practice of $2962, other weekly income from all sources of $60 for a total gross weekly income of $3022 and a net weekly income after the usual deductions of $2208. Plaintiffs financial affidavit at that time indicated a net weekly income of $143 from real estate commissions. Her testimony before this court was that "I was making nothing at the time of the divorce." Defendant's affidavit at that time indicated weekly expenses of $1963 [including voluntary support to plaintiff of $923] while plaintiffs weekly expenses then were $1553.
At the present time, defendant's financial affidavit indicates a gross weekly income of $1900 from his medical practice, $111 from other sources for a total gross weekly income of $2011 with a weekly net after the usual deductions of $1657. In turn, plaintiffs affidavit now shows $800 weekly in alimony payments and $44 in dividends for a total gross weekly income of $844 and a net weekly income after the customary deductions of $602. Plaintiff further testified that she presently works between 15 and 40 hours per week as a realtor, that she has earned $1500 net thus far this year and that "I believe I have the potential to earn between $20,000 and $25,000 per year."
Evidence from the defendant at the hearing on his motion for modification centers upon the reasons for the decrease in the income from his medical practice since 1995. Then as now his principal practice as an allergist was in Bristol, Connecticut with an additional one day a week spent at two clinics in Agawam, Massachusetts. Defendant testified that his Bristol practice has declined "mildly" since 1995, but that there has been a dramatic decrease in the income from Agawam sources since 1995 due principally to a change in business practices and patient billing following a change in ownership of the H.M.O. conducting the operation. Whereas in 1995 he was earning $72,000 annually from this source ($6,000 per month) he has since January, 1999 earned CT Page 13219 only $2500 monthly therefrom. Defendant added that whereas in 1996 he was paid in accordance with the number of patients in the health plan whether he saw anyone or not, he is now paid for the number of patients he sees. He added that the number of patients in this health plan has decreased as a result of increased fees.
Defendant also stated that he is now devoting the same amount of time to his medical practice (24-35 hours weekly) as he had since 1987, and that he has looked unsuccessfully for other medical sources of income to replace the Agawam problem.
During the hearing defendant testified that he suffered from chronic depression and had seen a psychiatrist for the past five years. Thereafter Dr. N. Monoharan, who had treated defendant from the start of this illness in 1994, testified the defendant suffers from bi-polar disorder type two, depression, that he was often sad, his energy low, his interest in activities considerably reduced, and that he had recurring thoughts about death and dying. Defendant's psychiatrist also stated that defendant's depression would not be helped were he to work four additional hours per week. He concluded by stating that there had been no change in defendant's condition since 1994, which antedated the dissolution and the accompanying stipulated judgment concerning alimony.
In closing argument defendant's counsel noted that defendant's income had been reduced by one-third. Plaintiffs attorney countered with the observation that defendant's current weekly expenses were $100 less than his net weekly income and that his assets had increased substantially since 1995.
The modification or termination of an alimony order after the date of a dissolution judgment is governed by Sec. 46b-86 (a) C.G.S. which provides that unless otherwise precluded a final order for alimony may be modified by the trial court "upon a showing of a substantial change of circumstances of either party." The burden of proving the existence of such change rests with the party seeking the modification. McGuinness v. McGuiness,185 Conn. 7, 10 (1981).
This court first concludes on the evidence that there has been a substantial change in the financial circumstance of defendant which has occurred subsequent to the dissolution. It further concludes that this change is sufficient to warrant a modification of the original decree. CT Page 13220
In determining the extent of the modification, the court must examine and weigh the evidence as it relates to the provision of Sec. 46b-82c C.G.S..
Defendant's claim that his bi-polar disorder requires modification of the original order is unpersuasive. This emotional problem had its origin in 1994, prior to the dissolution and is somewhat less severe at the present time than at its inception.
Defendant testified that he has worked about twenty five hours a week since commencing his practice about twenty two years ago. Plaintiff argues that he make an effort to increase his weekly hours devoted to his practice. On this issue, defendant's psychiatrist stated that defendant's "depression would not be helped if he works four hours more per week". The court concludes that an increase in working hours is not the solution to the problem.
The predominant factor in Sec. 46b-82 C.G.S. which the court must consider is the decrease by one-third of defendant's annual gross income since 1995 through no fault of his own. Defendant's testimony relating to the difficulties in practicing medicine resulting from the advent of H.M.O's was both moving and persuasive. His efforts to increase his diminished income, while unsuccessful, are commendable.
Having considered all of the evidence as it pertains to Sec.46b-82 C.G.S. this court concludes by ordering that defendant's payment of alimony to plaintiff be reduced from $800 to $600 weekly.
John D. Brennan Judge Trial Referee